# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOHN J. CASTELLANO,

                          Plaintiff,

v.                                        Case No. 16-CV-1248-JPS

JENNIFER SPOTTS,

                        Defendant.                   **ORDER**

On December 2, 2016, the Court screened the plaintiff's first amended complaint. (Docket #12). The Court found that the plaintiff had yet again improperly attempted to include unrelated claims against multiple defendants. *Id.* at 3-4. The Court struck the complaint and required the plaintiff to offer a second amended complaint to continue this action. *Id.* at 4. On December 21, 2016, the plaintiff submitted a second amended complaint. (Docket #15).

As noted in its November 3, 2016 screening order on the initial complaint, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *See* (Docket #10 at 1); 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The same standards cited in the original screening order apply here. (Docket #10 at 1-3).

The second amended complaint is presented against a single defendant, Jennifer Spotts ("Spotts"). (Docket #15 at 2). The plaintiff

complains that Spotts, a psychologist, lied about him in various ways, resulting in the revocation of his supervised release in January 17, 2014. *See id.* at 2-16. Most of the alleged falsities come from a report dated May 18, 2011, titled a "Sex Offender Program Report." (Docket #15-1 at 24-29). Therein, Spotts offered her opinions on the plaintiff after his completion of a sex offender treatment program she supervised. *Id.* The plaintiff states that there are a number of inaccuracies in the report, including facts regarding his underlying offenses and his relationship with other underage girls. (Docket #15 at 5-16). The plaintiff maintains that these alleged misstatements influenced various people involved in the revocation process, including the judge. *Id.*

The plaintiff claims that Spotts' lies were retaliation in violation of his First Amendment rights. *Id.* at 2. These allegations begin with the plaintiff's participation in the SO-2 program. *Id.* at 4-5. The plaintiff does not describe the contours of this program and the process for entering it, but Judge Adelman has:

> SO–2 is a short-term, eleven-month sex offender treatment program that is designed for inmates who have been identified through risk assessment as having a low to moderate risk for sexual re-offense and low to moderate treatment needs. Upon successful completion of SO–2, a treatment progress report is placed in an inmate's clinical file, and completion is noted for future case planning and classification. Completion of sex offender treatment is required for some parole-eligible inmates before they will be considered for release on parole. The Parole Commission makes this determination. When an inmate becomes parole-eligible or the Parole Commissioner provides an endorsement for treatment, the inmate is then reviewed by [the supervising doctor] for possible participation in SO–2. This typically occurs when an inmate is within a few years of eligibility for release.

There are a limited number of seats available in each sex offender treatment group and there is a lengthy wait-list to enroll. Inmates who are closest to their release date are considered for enrollment first to try to ensure that they receive treatment before they enter the community. When considering enrolling an inmate in SO–2, [the doctor] would consider an inmate's release date and would give additional consideration to whether the inmate had received from the Parol[e] Commission an endorsement for treatment. Such an endorsement signals to [the doctor] that the inmate may be eligible for parole release in the near future.

. . .

Inmates are selected for participation in SO–2 on a case-by-case basis. This occurs through a review of the current wait list and a review of the inmate's relevant records, including, but not limited to, the judgment of conviction, presentence investigation, criminal complaint, and Parole Commission endorsements. An inmate is then interviewed and asked to briefly explain their sexual offense history. Based on the information available, [the doctor] exercises professional discretion in selecting program participants.

*Glover v. Dickey*, No. 14-CV-87-LA, 2015 WL 5521858 *1-2 (E.D. Wis. Sept. 18, 2015).

With that primer, the Court addresses the plaintiff's relevant allegations. In January 2009, the plaintiff met with Spotts. He told Spotts that parole commissioner Steven Landreman ("Landreman") had "give [the plaintiff] his endorsement for SO-2." (Docket #15 at 4). Spotts responded that "there were inmates with five and six SOT endorsements from Mr. Landreman, but they had been denied, that he knows this, [and] that they have had several discussions on his endorsements[.]" *Id.* Spotts further stated that "there were 395 inmates on the SOT waiting list, and that she needed another ("87") facilitators for SOT programs. . . . She then said that inmates

are not allowed to participate in SOT until they are within two years from their mandatory release dates." (Docket #15-1 at 16).

In January 2010, the plaintiff met again with Landreman. The plaintiff had previously complained to Landreman that "his SOT/SO-2 recommendation(s) [had fallen] on deaf ears." (Docket #15 at 2). Landreman told the plaintiff "that he had just talked with [Spotts] about the . . . allegation that [the plaintiff's] SO-2 endorsements fell on deaf ears." *Id.* at 4. Landreman "said that [Spotts] called [the plaintiff] a ("LIAR")." *Id.* In March 2010, however, the plaintiff was enrolled in Spotts' SO-2 program, and successfully completed it in February 2011. *Id.* at 4-5. He was released on parole in May 2011. *Id.* at 5.

The Court concludes that the plaintiff has stated a viable claim for First Amendment retaliation. To state such a claim, the plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quotation omitted). The Court is not convinced that the plaintiff's complaint about the SO-2 program was protected speech, or that retaliatory motive can be inferred across the time span between the January 2010 "liar" comment and Spotts' May 18, 2011 report. *See Watkins v. Kasper*, 599 F.3d 791 (7th Cir. 2010) (addressing protected speech); *Banks v. Thomas*, No. 11-301-GPM, 2011 WL 6151637 (S.D. Ill. Dec. 12, 2011) (discussing timing issue). However, given the Seventh Circuit's extremely liberal approach to retaliation claims, the Court concludes that further factual development is needed before the claim is subject to dismissal.

The plaintiff's other related claims do not survive. The plaintiff fails to state a valid equal protection claim. He alleges a "class-of-one" style claim, which requires that "he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir. 2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Other than to state that legal conclusion, the plaintiff does not allege that he was treated differently than any other of Spotts' patients. He gives no hint of any facts to support an inference of differing treatment, and so the "class-of-one" claim must be dismissed.

The plaintiff further attempts to allege libel and slander, which fall under the modern umbrella of defamation. Unlike constitutional torts, such claims are based in state law, here the law of Wisconsin. Wisconsin has established a two-year statute of limitations for defamation. *Ladd v. Uecker*, 780 N.W.2d 216, 219 (Wis. Ct. App. 2010). Spotts' report was issued in 2011, and so the plaintiff has missed his window for bringing the claim by over three years.

In sum, the Court finds that the plaintiff may proceed only on the following claim: Spotts' retaliation against the plaintiff, in violation of the First Amendment, for his January 2009 complaint about her regarding his entry into the SO-2 program.

Accordingly,

**IT IS ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of plaintiff's complaint and this order will be electronically sent to the Wisconsin Department of Justice for service on the state defendant;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, the defendant shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

Dated at Milwaukee, Wisconsin this 27th day of December, 2016.

BY THE COURT:

J.P. Stadtmueller
District Judge