# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN J. CASTELLANO,

                Plaintiff,

v.

JENNIFER SPOTTS,

                Defendant.

Case No. 16-CV-1248-JPS

**ORDER**

## 1. INTRODUCTION

On December 27, 2016, the Court screened Plaintiff's Second Amended Complaint (his operative pleading) and allowed him to proceed on a claim of First Amendment retaliation. (Docket #16 at 5). On October 2, 2017, Defendant moved for summary judgment. (Docket #49). Plaintiff responded to the motion on October 16, 2017, and Defendant replied on October 30, 2017. (Response, Docket #55; Reply, Docket #56). For the reasons explained below, Defendant's motion must be granted.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most

favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

**3.    BACKGROUND**

**3.1    Plaintiff's Failure to Dispute the Material Facts**

The relevant facts are undisputed because Plaintiff failed to dispute them. In the Court's scheduling order, entered January 24, 2017, Plaintiff was warned about the requirements for opposing a motion for summary judgment. (Docket #20 at 2-3). Accompanying that order were copies of Federal Rule of Civil Procedure 56 and Civil Local Rule 56, both of which describe in detail the form and contents of a proper summary judgment submission. In Defendant's motion for summary judgment, she too warned Plaintiff about the requirements for his response as set forth in Federal and Local Rules 56. (Docket #49). He was provided with additional copies of those Rules along with Defendant's motion. *Id.* at 3-9. In connection with her motion, Defendant filed a supporting statement of material facts that complied with the applicable procedural rules. (Docket #53). It contained short, numbered paragraphs concisely stating those facts which Defendant proposed to be beyond dispute, with supporting citations to the attached evidentiary materials. *See id.*

As provided in Civil Local Rule 56, Plaintiff's responsive materials needed to contain "a concise response to the moving party's statement of facts," including "a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon[.]" *See* Civil L. R. 56(b)(2). Plaintiff's October 16 response falls far short of compliance with these requirements. The majority

of the document is a disorderly series of numbered paragraphs which offer legal argument. *See generally* (Docket #55).[1] In the few of those paragraphs which even mention a "statement of facts," Plaintiff's attention appears to be directed to that section of Defendant's legal brief, not her separate statement of facts. *See, e.g., id.* at 1 (discussing material found on "page 5, ¶2" of Defendant's "statement of facts," which correlates with that portion of Defendant's legal brief, not her actual statement of facts). None of those paragraphs cite any evidence at all, even though Plaintiff does attach some exhibits to his response. *Id.* at 1-3; (Docket #55-1).

Despite being twice warned of the strictures of summary judgment procedure, Plaintiff ignored those rules by failing to properly dispute Defendant's proffered facts in the correct form, and with citations to relevant, admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere

---

[1] The separate numbered paragraphs extract, and then respond to, various limited excerpts from Defendant's opening brief. *See generally* (Docket #55). This writing style is incredibly cumbersome and makes it difficult to draw any coherent point from Plaintiff's musings. This point has been noted to Plaintiff in prior litigation:

> Castellano's court filings are lengthy and often disjointed. We note the observations of one circuit court addressing another of Castellano's motions: "Castellano writes like an impressionist, lifting quotations out of transcripts and documents and published opinions, highlighting certain passages and stringing them together without explaining in a straightforward declarative sentence what I should conclude from them."

*State of Wisconsin v. Castellano*, 2012 WL 917408, at *4 n.1 (Wis. Ct. App. Mar. 20, 2012). Despite this instruction, Plaintiff has not seen fit to change his approach, and his arguments suffer for it.

disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. In short, judges are not like pigs, hunting for truffles buried in briefs.") (citations and quotations omitted). Though the Court is required to liberally construe a *pro se* plaintiff's filings, it cannot act as his lawyer, and it cannot delve through the record to find favorable evidence for him. Thus, the Court will, unless otherwise stated, deem Defendant's facts undisputed for purposes of deciding her motion for summary judgment. *See* Fed. R. Civ. P. 56(e); Civ. L. R. 56(b)(4); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants).[2]

---

[2]On August 22, 2017, Plaintiff filed a document titled as a motion for summary judgment. (Docket #43). The document itself did not contain a statement of facts, nor was it accompanied by a separate statement of facts. Like Plaintiff's response to Defendant's motion, his August 22 submission violates Civil Local Rule 56, though this time a different subsection of the Rule applies:

> With each motion for summary judgment, the moving party must file:
> . . .
> (C) a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law;
> > (i) the statement *shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the fact described in that paragraph*;
> > . . .
> > (iii) failure to submit such a statement constitutes grounds for denial of the motion[.]

*See* Civ. L. R. 56(b)(1)(C) (emphasis added). Plaintiff's motion cites this very rule, yet he still failed to comply with it. (Docket #43 at 3). In responding to Defendant's motion, Plaintiff "apologizes that he errantly omitted" a statement of facts in connection with his motion. (Docket #55 at 31). However, an apology cannot cure

### 3.2 Relevant Facts

The following facts are material to the Court's disposition.[3] In 1993, Plaintiff sexually assaulted his fourteen-year-old sister-in-law. In 2000, Plaintiff pled guilty to a number of sexual assault and exploitation offenses, resulting in a substantial prison term. Plaintiff was housed in Racine Correctional Institution ("RCI") to serve his sentence. Plaintiff had a parole hearing in January 2009 wherein he received an endorsement for placement in the SO-2 sex offender treatment program. Plaintiff mentioned the endorsement to Defendant, who at the time was a psychological associate who facilitated sex offender treatment at RCI. Defendant informed Plaintiff that many inmates had such endorsements, but that there was a long waiting list for entry into the SO-2 program.

Later in 2009, prior to another parole hearing, Plaintiff submitted a form to the parole commission complaining about the SO-2 wait list, as well as disputing his need for sex offender treatment at all. On January 5, 2010, Plaintiff was placed in an SO-2 treatment group with Defendant. Two days later, he had the anticipated parole hearing. There, apparently unaware of his placement, the parole commission gave Plaintiff another SO-2 endorsement. During that hearing, Plaintiff had a discussion about his SO-2 placement with parole commissioner Steven Landreman ("Landreman"). As the Court described in its screening order:

> The plaintiff had previously complained to Landreman that "his SOT/SO-2 recommendation(s) [had

---

this overwhelming procedural defect. Plaintiff's motion for summary judgment must therefore be rejected out of hand. Civ. L. R. 56(b)(1)(C)(iii). Defendant's related motion for an extension of time will be denied as moot. (Docket #45).

[3]All of the facts are drawn from Defendant's statement of facts, unless otherwise noted.

fallen] on deaf ears." (Docket #15 at 2). Landreman told the plaintiff "that he had just talked with [Spotts] about the . . . allegation that [the plaintiff's] SO-2 endorsements fell on deaf ears." *Id.* at 4. Landreman "said that [Spotts] called [the plaintiff] a ("LIAR")."

(Docket #16 at 4).

Defendant has a number of responses to Plaintiff's story. First and foremost, she denies calling Plaintiff a liar. Further, Defendant maintains that Landreman's above-described statements are hearsay. Other than Landreman's statements, there is no evidence that she was aware about Plaintiff's complaints to the parole commission. Defendant states that even if she had known of Plaintiff's complaints, it would have no effect on her, as she does not work for the parole commission and assumes that they know about the long waiting times for SO-2 placement. Finally, Plaintiff's statement that the endorsements "fell on deaf ears" is untrue. The endorsements are considered, among other factors like release date, disciplinary record, and acceptance of responsibility for the offense, that bears on when an inmate is placed in SO-2. In any event, Plaintiff only had to wait about a year for his placement.

Plaintiff's SO-2 treatment began in March 2010, and completed the program in February 2011. Plaintiff was granted parole in May 2011. On May 18, 2011, Defendant prepared a "Sex Offender Program Report" (the "Report") documenting Plaintiff's completion of the SO-2 program. The Report contained a detailed narrative describing Plaintiff's offense, mental health history, sexual history, and many other topics. This information was drawn from Plaintiff's Department of Corrections file, including the presentence reports prepared in his criminal case and Defendant's own notes of Plaintiff's treatment sessions. Defendant also offered

recommendations about Plaintiff's continued treatment. She suggested that Plaintiff continue to receive community-based sex offender treatment, called SO-1. Defendant further stated that

> it is likely that [Plaintiff] will initially struggle to apply the things he has learned in SO-2[.] . . . It is likely that he would have been better served in the more intensive residential, SO-4 program. Thus, it is unclear to what extent his sex offender needs have been met[.]

(Docket #54-1 at 8). Defendant avers that she did not intentionally include any inaccurate information in the Report, and its preparation was in no way motivated by anything Plaintiff said to her about the SO-2 waitlist or the alleged Landreman conversation.

Plaintiff's parole was revoked within a year of his release in May 2011. The resultant period of incarceration ended in June 2013. Plaintiff's parole was then revoked yet again, leading to his current confinement.

4. ANALYSIS

Plaintiff was permitted to proceed against Defendant on one claim: First Amendment retaliation. The claim is based on Plaintiff's complaints to the parole commission in 2009 and 2010, which Plaintiff alleges motivated Defendant to include certain inaccuracies and willful misstatements in the May 2011 Report. (Docket #16 at 4). Even at the time of screening Plaintiff's complaint, the Court was doubtful that such a claim could be maintained. *Id.* The Court was "not convinced that the plaintiff's complaint about the SO-2 program was protected speech, or that retaliatory motive can be inferred across the time span between the January 2010 'liar' comment and [Defendant's] May 18, 2011 report." *Id.* Nevertheless, "given the Seventh Circuit's extremely liberal approach to retaliation claims, the Court

conclude[d] that further factual development is needed before the claim is subject to dismissal." *Id.*

That development has arrived and it necessitates dismissal. To succeed on a First Amendment retaliation claim, a plaintiff must initially prove three things: "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quotation omitted). If those elements are established, the defendant can rebut the plaintiff's case by showing that the complained-of harm would have occurred anyway. *Thayer v. Chiczewski*, 705 F.3d 237, 251-52 (7th Cir. 2012). Finally, "[o]nce a defendant produces evidence that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Id.* at 252.

The Court can assume, without deciding, that the first three elements are established, because Plaintiff utterly fails to pass through the final steps of the First Amendment retaliation analysis. In her motion, Defendant maintains that she had no inkling of Plaintiff's complaints to the parole commission or the "liar" comment. As a consequence, they played no part in her preparation of the Report more than a year after those events. Plaintiff was thus required to respond with evidence that Defendant's explanation is false.

Plaintiff did not do so. As noted above, he did not properly dispute Defendant's statement of facts, thereby conceding the truth of Defendant's

explanation. This alone merits granting Defendants' motion.[4] Nevertheless, even if the Court considered Plaintiff's factual assertions in his response brief, the result would not change. As noted above, the first three pages of Plaintiff's response brief address certain of Defendant's factual assertions, though not in the manner prescribed by the rules of procedure. (Docket #55 at 1-3). In sum, Plaintiff claims that Defendant's retaliatory animus is "fully apparent" on the face of the Report, because Defendant relied on inaccurate presentence reports and made material misstatements which portrayed Plaintiff as "incorrigible." *Id.* at 2-3. Plaintiff further states that, "hearsay or no," Defendant called him a liar as relayed by Landreman. *Id.* at 3.

Though Plaintiff makes these allegations under oath, he fails to cite any other evidence. *See id.* at 2-3. Plaintiff's own say-so does not prove anything of moment. It does not establish that Defendant knew about his complaints or the "liar" comment. It does not show that the material Defendant relied on in preparing the Report was actually false or that she knew of its falsity. Likewise, Plaintiff offers no evidence to suggest that Defendant knowingly included any other inaccuracies in the Report. Most importantly, Plaintiff needed to come forward with evidence that Defendant prepared the Report in the manner she did *because* she wanted to retaliate against him for his earlier comments. No reasonable inference of this motivation can be drawn based solely on Plaintiff's mere belief in the same.

---

[4]Extremely recent Seventh Circuit authority also confirms the Court's suspicions discussed in the screening order; the time span between the allegedly protected speech and the date of the Report was too long to permit an inference of retaliation. *Shaw v. Litscher*, No. 17-1223, 2017 WL 4548455, at *2 (7th Cir. Oct. 12, 2017) ("We've held in other cases that a time lag of seven months is too long to permit a reasonable inference of retaliation.").

In his only direct response to Defendant's argument on this point, Plaintiff reveals his mistaken understanding of the applicable law. First, Plaintiff asserts that the burden-shifting framework identified in *Thayer* "is not good on-point case law authority[.]" (Docket #55 at 15). This statement, in and of itself, is untrue; for First Amendment retaliation claims, the *prima facie* case is the starting point, not the end. Plaintiff's explanation for the statement does not help matters. He suggests that he "does not need to produce any evidence as to Spotts['] proffered reasons" because her job duties obligated Defendant to prepare the Report, and because Plaintiff reiterates that she did indeed know about his complaints. *Id.* at 14-15. As already discussed, Plaintiff failed to appropriately dispute the latter predicate. As to the former predicate, it is irrelevant and almost nonsensical. Whether or not Defendant had a duty to create the Report has nothing to do with whether her motivation in preparing it was retaliatory.

5. **CONCLUSION**

On the undisputed facts presented, Plaintiff's First Amendment retaliation claim fails and summary judgment must be granted in Defendant's favor.[5] This action will, therefore, be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #49) be and the same is hereby **GRANTED**;

---

[5] The Court notes that despite being permitted to proceed only on a First Amendment retaliation claim, Plaintiff's response repeatedly alleges that the Report was defamatory or constituted "malpractice" of some kind. *See, e.g.*, (Docket #55 at 3, 6, 13, 30). He also vaguely references other potential constitutional claims. *Id.* at 14. Plaintiff's arguments on these points are irrelevant and have been entirely disregarded.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #43) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's motion for an extension of time (Docket #45) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of November, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge